AO-106 (Rev: 06/09)-Application for Search Warrant

# FILED

SEP 22 2022

Mark C. McCarit, Clerk
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

## for the

## Northern District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>Location Information Concerning Cellular Telephone<br>Assigned Call Number 970-571-1886, with Service<br>Provider Verizon, Account Number 625423387-1 and<br>International Mobile Subscriber Identifier (IMSI)<br>[311480762823183] | )<br>)<br>)<br>)<br>) | Case No. 22-MJ-606-JFJ<br><br>**FILED UNDER SEAL** |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

> See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized):*

> See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. § 2261A(l)(B), 2261(b)(5), and 1151** | **Stalking** |
| **18 U.S.C. § 922(g)(3) and 924(a)(2)** | **Unlawful User of a Controlled Substance in Possession of Firearms and Ammunition** |

The application is based on these facts:
> **See Affidavit of Christopher McCarthy, attached hereto.**

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Christopher McCarthy, FBI
*Printed name and title*

Sworn to before me and signed by telephone.

Date: __9/22/22__

*Judge's signature*

City and state: __Tulsa, Oklahoma__

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of Location Information Concerning Cellular Telephone Assigned Call Number 970-571-1886, with Service Provider Verizon, Account Number 625423387-1 and International Mobile Subscriber Identifier (IMSI) [311480762823183] | Case No. _____ <br><br> FILED UNDER SEAL |

### Affidavit in Support of an Application for a Search Warrant

I, Christopher McCarthy, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant and order under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for location information concerning the cellular telephone assigned call number (970) 571-1886, International Subscriber Identity (IMSI) number [311480762823183] and Account Number 625423387-1, with listed subscriber(s) Jeremy Ryan Wetch at 126 Main Avenue, Akron, Colorado 80720, identified as being utilized by Jeremy Ryan Wetch (the "Target Cell Phone"), whose service provider is Verizon, a wireless telephone service provider headquartered at 1095 Avenue of the Americas, New York, New York 10036. The Target Cell Phone is described in the following paragraphs and in Attachment A, and the location information to be seized is described in the following paragraphs and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since November 2019. I am currently assigned to the Tulsa Resident Agency of the Oklahoma City Division. Since joining the FBI, I have investigated violations of federal law, including stalking. I have gained experience through training classes and work conducting investigations of this type.

4. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the

application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Jeremy Ryan Wetch has violated 18 U.S.C. § 2261A(I)(B), 2261(b)(5), and 1151, Stalking, and 18 U.S.C. § 922(g)(3) and 924(a)(2), Unlawful User of a Controlled Substance in Possession of Firearms and Ammunition. Jeremy Ryan Wetch was charged with these crimes on June 1, 2020 and October 5, 2020 respectively, and is the subject of an arrest warrant issued on November 17, 2020. There is also probable cause to believe that Jeremy Ryan Wetch is aware of these charges and has fled. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Jeremy Ryan Wetch, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

### Jurisdiction

6. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

7. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Verizon from notifying the

3

subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## Cell Phone Location Data Background

8. A search of the Electronic Telephone Number System (eTNS) database on July 12, 2022, revealed that telephone number (970) 571-1886 has been associated with the provider Verizon Wireless since January 1, 2004, whose records are maintained by Verizon, since October 4, 2017.

9. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. Providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas,

4

and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

10. Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

11. Based on my training and experience, I know that Verizon can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## Probable Cause

12. FBI agents are conducting a criminal investigation of possible violations of 18 U.S.C. § 2261A(l)(B), 2261(b)(5), and 1151, Stalking, and 18 U.S.C. § 922(g)(3) and 924(a)(2), Unlawful User of a Controlled Substance in Possession of Firearms and

Ammunition (the "Target Offenses"), involving Jeremy Ryan Wetch, and including locations of places used for the commission of these offenses.

13. On October 9, 2018, Jeremy Ryan Wetch was involved in a hit and run and domestic violence incident at 465 Main Avenue, Akron, Colorado. Wetch and his girlfriend of three years, H.J.S., had lived together in Akron, Colorado. According to H.J.S., Wetch had a history of abusing her both physically and emotionally. In October, H.J.S. arranged for two friends, J.H. and T.A., to drive several hours to Akron in order to pick up H.J.S. and take her to the airport. When J.H. and T.A. arrived and got out of their Hyundai Elantra, Wetch drove his Hummer H2 at their car and hit it. Wetch then drove away. The Hyundai Elantra was totaled.

14. Wetch left Akron, Colorado and drove to Tulsa, Oklahoma to stalk another woman named M.M. She and Wetch had known each other for approximately two years after meeting on a website called SeekingArrangement.com. They communicated and sometimes met up. At some point, Wetch and M.M. shared each other's phone locations. Around August 2018, Wetch's behavior grew erratic and unpredictable. Wetch used the shared-location feature on the phones to stalk M.M. and show up at her location unannounced. M.M. then stopped sharing her location with Wetch and told him they could no longer be friends or communicate.

15. After the friendship ended, Wetch began to threaten M.M. and M.M.'s significant other, B.W. Wetch threatened M.M. and B.W. via the video-calling application FaceTime and over text messages. The threats included physical violence

against B.W. and M.M. as well as emotional abuse targeting M.M. and B.W. Wetch also threatened to commit suicide.

16. Despite M.M. telling Wetch not to contact her, on October 12, 2018, Wetch stalked M.M. in Tulsa, Oklahoma, within the Muscogee (Creek) Reservation. Wetch visited M.M. and B.W.'s residence multiple times, leaving flowers and dog toys. Wetch drove by the house and stopped about four to six times over a three-hour period. M.M. and B.W. neighbor, J.S., notified the police of Wetch and his behavior.

17. The Tulsa Police Department stopped Wetch's Hummer H2 in Tulsa, Oklahoma. During the traffic stop, Tulsa Police seized items, including $675 cash, marijuana, prescription pills, three handguns, ammunition, bear mace, Taser cartridges, and multiple cell phones.

18. Wetch was arrested for possession of marijuana with intent to distribute and a firearm during a commission of a felony. The seized items have been securely stored at the Tulsa Police Department, 6800 South Riverside Drive, Tulsa, Oklahoma.

19. The U.S. Attorney's Office learned of the events in Tulsa in October of 2018. However, no charges were pursued at that time.

20. Wetch pleaded to state misdemeanor charges in Tulsa County on February 4, 2019. He received a deferred sentence. He completed the deferred sentence on January 31, 2020. The state charges were expunged.

21. In September 2019, the U.S. Attorney's Office learned the nature and extent of the events that took place in Akron, Colorado. Given the cross-jurisdictional

7

nature of the course of events, the FBI began investigating a possible case under the Violence Against Women Act.

22. On June 1, 2020, a federal grand jury in the Northern District of Oklahoma charged Wetch for Stalking, in violation of 18 U.S.C. §§ 2261A(1)(B), 2261(b)(5), and 1151. On June 2, 2020, an arrest warrant for Jeremy Ryan Wetch was issued.

23. On July 20, 2020, Jeremy Ryan Wetch was arrested by Colorado State Patrol during a traffic stop.

24. On August 24, 2020, Jeremy Ryan Wetch appeared for his Initial Appearance and was released from custody on the condition Wetch would participate in the Home Confinement Program to include electronic monitoring.

25. On October 5, 2020, a federal grand jury in the Northern District of Oklahoma charged Wetch in a superseding indictment for Stalking, in violation of 18 U.S.C. §§ 2261A(1)(B), 2261(b)(5), and 1151, and Unlawful User of a Controlled Substance in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g)(3) and 924(a)(2). On October 6, 2020, a summons was issued for Jeremy Ryan Wetch. On November 2, 2020, Jeremy Ryan Wetch appeared for his initial appearance on the superseding indictment .

26. Wetch later absconded from pretrial supervision and a bench warrant was issued on November 17, 2020.

27. On May 31, 2022, Wetch's sister, A.K., provided a possible phone number for Wetch, (970) 571-1886.

8

28. I have contacted Verizon, which is the cellular telephone service provider currently servicing the phone number (970) 571-1886. Verizon has advised that service to phone number (970) 571-1886 is currently active and lists Jeremy Ryan Wetch as the account holder.

## Authorization Requested

29. Based on the foregoing, I request the issuance of a search warrant and order to obtain Global Positioning System (GPS) data related to the precise latitudinal and longitudinal location coordinates of the Target Cell Phone. I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment B for each communication to or from the Target Cell Phone, without geographic limit, for a period of thirty days (30) days, pursuant to 18 U.S.C. § 3123(c)(1).

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give

that person an opportunity to continue flight from prosecution. *See* 18 U.S.C. §
3103a(b)(1). As further specified in Attachment B, which is incorporated into the
warrant, the proposed search warrant does not authorize the seizure of any tangible
property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant
authorizes the seizure of any wire or electronic communication (as defined in 18
U.S.C. § 2510) or any stored wire or electronic information, there is reasonable
necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

31. I further request that the Court direct Verizon to disclose to the government
any information described in Attachment B that is within the possession, custody, or
control of Verizon. I also request that the Court direct Verizon to furnish the
government all information, facilities, and technical assistance necessary to
accomplish the collection of the information described in Attachment B
unobtrusively and with a minimum of interference with Verizon's services, including
by initiating a signal to determine the location of the Target Cell Phone on Verizon's
network or with such other reference points as may be reasonably available, and at
such intervals and times directed by the government. The government shall
reasonably compensate Verizon for reasonable expenses incurred in furnishing such
facilities or assistance.

32. I further request that the Court authorize execution of the warrant at any time
of day or night, owing to the potential need to locate the Target Cell Phone outside
of daytime hours.

## Conclusion

33. Based on the facts set forth above, I submit that there is probable cause to believe that Jeremy Ryan Wetch has violated 18 U.S.C. § 2261A(l)(B), 2261(b)(5), and 1151, Stalking and 18 U.S.C. § 922(g)(3) and 924(a)(2), Unlawful User of a Controlled Substance in Possession of Firearms and Ammunition, and is currently avoiding capture by law enforcement. Jeremy Ryan Wetch was charged with these crimes on June 1, 2020, and October 5, 2020 respectively. He is the subject of an arrest warrant that was issued on November 17, 2020. There is also probable cause to believe that Jeremy Ryan Wetch is aware of these charges and has fled. Also based on the foregoing, there is probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Jeremy Ryan Wetch, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Respectfully submitted,

Christopher McCarthy
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to by phone on September 22nd, 2022.

THE HONORABLE JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

### Property to be Searched

1.  Records and information related to a cellular telephone assigned call number (970) 571-1886, with listed subscriber(s) Jeremy Ryan Wetch, identified as being utilized by Jeremy Ryan Wetch (the "Target Cell Phone"), whose wireless service provider is Verizon, a wireless telephone service provider headquartered at 1095 Avenue of the Americas, New York, New York 10036.

2.  Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Verizon**

All information about the location of the Target Cell Phone described in

Attachment A for a period of **14 days** from the date of this warrant, during all times

of day and night. "Information about the location of the Target Cell Phone" includes

all available E-911 Phase II data, GPS data, latitude-longitude data, range to tower

data, distance to tower information, per call measurement data and other precise

location information, as well as all data about which "cell towers" (i.e., antenna

towers covering specific geographic areas) and "sectors" (i.e., faces of the towers)

received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph

(hereinafter, "Location Information") is within the possession, custody, or control of

Verizon, including any information that has been deleted but is still available to

Verizon or that has been preserved pursuant to a request made under 18 U.S.C. §

2703(f), Verizon is required to disclose the Location Information to the government.

In addition, Verizon must furnish to the government all information, facilities, and

technical assistance necessary to accomplish the collection of the Location

Information unobtrusively and with a minimum of interference with Verizon's

services, including by initiating a signal to determine the location of the Target Cell

Phone on Verizon's network or with such other reference points as may be

reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant will also function as a pen register order under 18 U.S.C. § 3123, authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture the information outlined below for each communication to or from the Target Cell Phone, without geographic limit, for a period of thirty days (30) days, pursuant to 18 U.S.C. § 3123(c)(1).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Verizon is further required to disclose to the government the following information associated with each communication to and from the Target Cell Phone for a period of **14 days** from the date of this warrant, limited to information pertaining to the following matters:

1. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

2. Source and destination telephone numbers;

3. Date, time, and duration of each communication; and

2

4.    All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Number will connect at the beginning and end of each communication.

## II.    Information to be seized by the government

All information described above in Section I that will assist in arresting Jeremy Ryan Wetch, who was charged with violating 18 U.S.C. § 2261A(l)(B), 2261(b)(5), and 1151: Stalking on June 1, 2020 and 18 U.S.C. § 922(g)(3) and 924(a)(2): Unlawful User of a Controlled Substance in Possession of Firearms and Ammunition on October 5, 2020, is the subject of an arrest warrant issued on November 17, 2020 and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon in order to locate the things particularly described in this warrant.

3